### Knebelkamp et al. v. Acosta et al.

(Decided March 8, 1933.)

HUSTON QUIN, PERCY E. SMITH and RICHARD P. DIETZ-MAN for appellants.

NELSON K. HELM for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

Wathen Knebelkamp and Florence Knebelkamp, individually and as executor and executrix of the will of William F. Knebelkamp, deceased, Lillian Knebelkamp, and Sophia Knebelkamp, widow of William F. Knebelkamp, deceased, Mary Ermegarde Shaffer, and Thelma Knebelkamp Long, instituted an action in the Jefferson circuit court, against James, Robert and William Acosta, infants under the age of 14 years, and the surviving children of Nancy Lee Acosta, deceased, for a construction of that part of the will and codicils of William F. Knebelkamp, deceased, affecting the rights of parties hereto, under the declaratory judgment act. The judgment of the chancellor is in part as follows:

"I. (a) That under the will and first codicil of W. F. Knebelkamp, Nancy Lee Acosta was entitled to a cash bequest of $7,500.00, which by her death prior to that of the testator vested under Kentucky Statutes, Section 4841, in her children, James, Robert and William Acosta, the defendants herein, in equal shares.

"(b) That the second codicil to the will of W.

F. Knebelkamp does not revoke said $7,500.00 bequest, nor substitute baseball stock therefor, but creates a cumulative bequest conditioned upon the value of said stock as of the date of W. F. Knebelkamp's death.

"II. That James Acosta, William Acosta and Robert Acosta, jointly and equally recover of Wathen Knebelkamp and Florence Knebelkamp, as Executors under the will of W. F. Knebelkamp, deceased, the sum of $7,500.00, with interest thereon from January 16, 1937, until paid and their costs herein expended."

Appellants appeal from that judgment. William F. Knebelkamp executed his will on January 7, 1928. By its provisions he willed to Nancy Lee Acosta, the mother of the three infant appellees, by clause No. 4, as follows:

"Clause IV. I give, devise, and bequeath to Mrs. Nancy Lee Acosta, of Louisville, Kentucky, my foster daughter, who was raised in my family, one-tenth (1/10) of the net income from dividends derived from same, and payable as said dividends are paid, for and during the term of her natural life only, and subject to the restrictions and conditions hereinafter named in this will."

The restrictions referred to in clause No. 4 are set out fully in clause No. 7 as follows:

"Clause VII. The conditions referred to in the above clauses are that said baseball stock shall be held intact, and all shares shall be voted the same as each share, for and during the joint natural lives of all the persons named in the preceding six clauses; except that my trustees hereinafter named shall have the right at any time, to sell said stock as a whole, at a price to be fixed by them, and full right and power to assign, sell, and convey full and complete title to same without the consent, knowledge, or notice to any of the beneficiaries herein named; and in the event of such sale, all moneys derived therefrom are to be immediately invested in interest-bearing bonds, and the income from such bonds shall follow and flow and be divided in the same manner and to the same purposes as the in-

come from said baseball stock, and be subject to the same restrictions named on same in this will.''

By clause No. 10, he provided:

''In the event of the death of any of the beneficiaries named in Clauses II, III, IV, and V, the income so released by the death of any of said beneficiaries shall be divided into three equal parts, and paid to my three children, Wathen, Mary Ermegarde, and Thelma, share and share alike; and if any of them be dead, the same shall be paid to their living issue, if any. If any of my children die, the portion of the income from my baseball stock payable to my said child shall be payable to his of her living issue, if any,; and if any one of my said three children die without living issue, the income from said baseball stock provided for herein and under Clause VI shall be payable to my surviving children; or if dead, to their issue, share and share alike.''

By clause No. 2 he devised one-twentieth of the net income of his Louisville Baseball Company's stock to his sister, Florence Knebelkamp, by clause No. 3, one-twentieth to his sister, Lillian Knebelkamp; by clause No. 5, to his wife, Sophia Knebelkamp, five-tenths of the net income of the baseball stock; by clause No. 6, to his son, Wathen Knebelkamp, his daughters, Mary Ermegarde Shaffer and Thelma Knebelkamp, one-tenth to each of the net income of the same stock; but in each clause, only for their natural lives. The residue of his property, whether real, personal, or mixed, he devised to his wife, Sophia Knebelkamp, for her life; to enjoy the usufruct from same until her death; then to be divided equally between his three children; Wathen and Lillian Knebelkamp, and Mary Ermegarde Shaffer.

On the ——— day of June, 1930, the day of the month not given, he executed a codicil, which reads as follows:

''Codicil 1. I, William F. Knebelkamp, of Jefferson County, Kentucky, being of sound mind and disposing memory, do hereby make and declare this as a codicil to my will.

''First: I revoke Clause II in which I give my sister, Florence, 1/20 of the income from the baseball stock owned by me; and I revoke Clause III in

which I give my sister, Lillian, 1/20 of the income from said stock; and I revoke Clause IV, of this will, wherein I give Mrs. Nancy Lee Acosta, 1/10 of the net income from said stock; and in lieu of Clause II, I give my sister Florence, the sum of $5,000.00, to be paid to her in cash as soon as my executors have the cash in hand to make said payment; and in lieu of Clause III, I give to my sister, Lillian Knebelkamp the sum of $5,000.00, to be paid to her as soon as my executors have the money on hand with which to pay same; and in lieu of Clause IV, I give to my foster daughter, Mrs. Nancy Lee Acosta, the sum of $7,500. to be paid to her as soon as my executors have the money on hand with which to pay same.

"I further direct that the 1/20 of the net income from the stock owned by me in the Louisville Baseball Company from dividends derived from same, which I have taken from Florence Knebelkamp in this codicil, be paid to my wife, Sophia Knebelkamp; and further that the 1/20 of said net income, which I have taken from Lillian Knebelkamp by this codicil from Clause III of my will, be paid to my wife, Sophia Knebelkamp; and I further direct that the 1/10 of said income from said stock which I have taken from Mrs. Nancy Lee Acosta by revoking Clause IV of my will, be paid to my wife Sophia Knebelkamp.

"I hereby re-affirm all the provisions of this my said will, except the changes made in this codicil.

"William F. Knebelkamp."

By that codicil he revoked one-tenth part of the income of his baseball stock that he had devised to Nancy Lee Acosta, and in lieu thereof gave her $7,500 in money, and directed it paid to her by his executor as soon as there was sufficient money in the hands of the executor to do so. On August 13, 1932, he executed a holographic codicil which is as follows:

"In case the Five Thousand ($5,000.00) Dollars I left my sisters, Lillian and Florence exceed 1/20 of my baseball stock they or to receive the 1/20 then and in case the Seventy-five Hundred ($7500.00) Dollars exceed 1/10 of my baseball stock

then Nancy Lee Acosta is to receive the 1/10 of the stock.

"W. F. Knebelkamp."

The problem is presented under the second codicil when read and construed in connection with the entire will and first codicil, which we must do to obtain the intention of the testator, in the disposition of his property. Are appellees entitled to the $7,500 devised to their mother by codicil No. 1, or are they entitled only to the one-tenth of the baseball stock, as provided by codicil No. 2? The entire will and all of its provisions will be looked to when arriving at the intention of the testator. There is another rule that "a codicil should be considered as an addition to, modification of, and as a part of, the will, and construed in connection therewith so as to not effect an alteration of the will to which it is added, 'except by clear language indicating such purpose.'" Bowman et al. v. Morgan, 236 Ky. 653, 33 S. W. (2d) 703, 706, and cases cited therein. The will with the codicils should be considered together and the intention of the testator gathered from its four corners. Poth's Adm'r et al. v. Muse et al., 244 Ky. 433, 50 S. W. (2d) 967. The construction of the will given, as we understand it, by the chancellor, was that, as the baseball stock was worthless, it was ignored, but the $7,500 passed to appellees under codicil No. 1. We find in the record a written opinion of the chancellor. In the closing part he said:

"As the ball stock is worthless, wash up codicil two and draw judgment as though it did not exist."

The judgment was drawn accordingly. Is that judgment right or wrong? The widow, Sophia Knebelkamp, as provided by section 1404, Kentucky Statutes, and within the time and manner provided by that section, relinquished the provisions of the will and chose to share in the estate of her husband as provided by the laws of descent and distribution, leaving the provisions of the will and codicils that apply to the remaining devisees intact. Nancy Lee Acosta died prior to the death of the testator, leaving the three named appellees as her only children and heirs at law. Under section 4841, Kentucky Statutes, they stepped into her shoes and are entitled to the same interest under the will that she would have been entitled to, had she lived.

The question arises, Does this second codicil when

considered in connection with the main will of the deceased, and codicil No. 1, disclose the interest intended to be devised, and to whom devised? A solution of that question is our task.

In the first codicil the testator devised to his sisters, Florence and Lillian Knebelkamp, $5,000 each. In the second codicil he definitely stated that, in case the $5,000 that he left to his sisters, referring certainly to the first codicil, and to Florence and Lillian Knebelkamp named therein, should exceed one-twentieth of his baseball stock, they would receive then one-twentieth of the stock; also, in the same codicil he provided that in case the $7,500 exceed one-tenth of the baseball stock, then Nancy Lee Acosta was to receive the one-tenth of the stock, surely referring to the $7,500 that he had devised her in the first codicil. By codicil No. 2°he meant that the bequest of the $7,500 to her depended upon whether or not that amount exceed the value of one-tenth of his baseball stock. As the baseball stock, at the time his last codicil was written on August 13, 1932, and at the time of his death, was, in fact, practically worthless, we must conclude that the $7,500 was at that time greatly in excess of the baseball stock; therefore, it follows that the only reasonable conclusion that the court can reach, when making an effort as we must do, not only from codicil No. 2, but reading it in connection with the will and codicil No. 1, is that it was the intention of the testator to devise by codicil No. 2 to his foster daughter, Nancy Lee Acosta, the one-tenth of his baseball stock in lieu of the $7,500; also, to his sisters, Florence and Lillian Knebelkamp, one-twentieth of his baseball stock in lieu of the $5,000 each that he had given them by codicil No. 1. We are of the opinion that it was not the purpose or intention of William F. Knebelkamp to make codicil No. 2 cumulative but rather substitutional to codicil No. 1 and to his original will. Goddard's Ex'x v. Goddard, Jr., et al., 160 Ky. 759, 765, 170 S. W. 176. There is abundant reason shown by the record why such a construction reaches the real intention of Knebelkamp, the testator. When he executed his original will in 1928, his baseball business was flourishing. Doubtless, he believed, and reasonably so, that his baseball stock was of great value. From the record, it was valuable. It was his purpose at that time, as his will indicates, to provide particularly for his wife and children. He devised to his wife the income of one-

half of his stock; his two sisters, only one-twentieth each; his foster daughter only one-tenth; no doubt believing at the time that the income or dividend from his stock would well provide for his sisters and Nancy Lee Acosta, his foster daughter, in their support. Later, in June, 1930, entertaining full faith, no doubt, that his stock in the baseball company, after the depression had passed, would become valuable, but knowing that it would take time, he then, by his first codicil, devised to his two sisters, $5,000 each, in lieu of the income for life of the stock, and to his foster daughter, $7,500, in lieu of the income for life of the stock given under his will, directing that these sums be paid as soon as the executor could obtain the funds. Later, a crisis came in his business; the value of his stock began to decrease, and it became necessary for him to mortgage his property to obtain funds to continue his interest in his baseball undertakings; no doubt, considering that the interest of his wife and children was his first charge, and that he owed his highest duty to them. It is reasonable that he concluded if anyone should lose by his will, it was preferable that it would be his sisters and foster daughter, rather than his wife and children; therefore, still hoping and believing that the stock in the baseball company would, in the future, increase in value, he then wrote, by his own hand, on August 13, 1932, codicil No. 2. At that time the depression that he had passed through was gradually being lifted, so by that codicil he provided that the $5,000 willed to each of his two sisters and the $7,500 to Nancy Lee Acosta, would not be received by them, in the event the amount exceeded one-twentieth of the baseball stock as devised to Nancy Lee Acosta. In that event, they were to receive only the stock, but no part of the money gift. Having reached this conclusion, it is the opinion of the court that the construction given by the chancellor should be reversed.

Wherefore, the judgment is reversed, with further proceedings consistent herewith.